NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

DRIVER SALESMEN, WAREHOUSE-MEN, FOOD HANDLERS, CLERICAL & INDUSTRIAL PRODUCTION TEAMSTERS UNION, LOCAL NO. 582, Affiliated with the International Brotherhood of Teamsters, et al., Respondents.

No. 81–7259.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1981.

Decided March 3, 1982.

Edward S. Dorsey, Washington, D. C., for petitioner.

William A. Roberts, Vance, Davis, Roberts, Reid & Anderson, Seattle, Wash., for respondents.

Before KILKENNY, GOODWIN and SKOPIL, Circuit Judges.

GOODWIN, Circuit Judge.

Pursuant to Section 10(e) of the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*, the National Labor Relations Board petitions this court for enforcement of its order declaring unlawful the extension of vision care as part of the health-benefit package for members of Driver Salesmen, Warehousemen, Food Handlers, Clerical and Industrial Production Teamsters Union, Local No. 582 administered by the Inland Empire Teamsters Trust.

The Union and Associated Industries of Inland Empire, a multi-employer bargaining group, maintained a collective bargaining relationship over a number of years. Pursuant to Section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5), the Trust was created in 1966 and modified in 1976 to conform to the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. §§ 1001 *et seq.*

The three charging parties, Crescent, Genuine Parts, and Columbia Lighting utilize some of the services of Associated Industries but bargain individually with the Union. These employers signed an agreement accepting the Trust and all provisions of the trust agreement. During contract negotiations with the three charging parties in 1975 and 1976, the Union proposed to at least two of the charging parties that the contract include vision care benefits as part of the health and welfare package. None of the three employers accepted this proposal.

The Board of Trustees consists of six trustees: three appointed as "Union" trustees and three as "employer" trustees. The employer trustees are representative of various employers but none is related to the charging parties. Trust decisions require unit voting. The Union and employer representatives each have one vote. Decisions require two votes. Each vote is by majority vote of union trustees and by majority vote of employer trustees.

At a trustees meeting on December 7, 1976, two union trustees proposed that the Trust establish a vision care plan by using $100,000 from the Trust's unallocated reserve fund. The funding would extend only through the term of the existing collective bargaining agreement. After that time, employers had to agree to pay for vision care benefits or these benefits would be terminated for the employees of employers who did not pay for these benefits. The $100,000 from the reserve funds would be replaced later by employer contributions to the vision care benefits.

This proposal received the unanimous vote of the union trustees and a majority vote of the employer trustees. In June 1977, the Union distributed notices of the vision care benefits to the employees of Crescent and Genuine Parts. Notice was mailed to employees of Columbia. The vision care benefits went into effect in July 1977.

The three employers then filed charges alleging that the implementation of vision care benefits violated Sections 8(b)(3) and 8(d) of the Act, 29 U.S.C. §§ 158(b)(3) and (d).

On January 31, 1979, an administrative law judge found (1) that the Trust was an agent of the Union because Union trustees caused the Trust to establish vision care benefits and (2) that the establishment of vision care benefits constituted a unilateral contract modification in violation of Section 8(b)(3) of the Act, 29 U.S.C. § 158(b)(3). The administrative law judge ordered the Union and the Trust to rescind the benefits.

The Union and the Trust appealed the administrative law judge's decision to the Board. The Board, with member Fanning dissenting, affirmed the findings of the administrative law judge. The Board modified the remedy to require the Union to reimburse the employers for whatever the vision care benefits cost them in additional contributions to the Trust.

A. *The Finding of Agency.*

█ In order to establish a violation of Section 8(b)(3) of the Act, the Board had to establish that the Trust was an agent of the Union. The Board argument is that the Union trustees "caused" the Trust to imple-

ment vision care benefits and therefore the Union trustees "intended to promote union, not trust, goals." In addition, once the trustees passed the plan, the Union advertised the new benefits and helped to implement the plan "by maintaining a file of all employees participating therein and assisting employees in completing their claim forms ... and by establishing a clinic in its offices for vision care services."

Citing *NLRB v. United Broth. of Carpenters & Joiners*, 531 F.2d 424 (9th Cir. 1976), the Board claims that a trust can be found to be an agent of the union "where, as here, there is evidence indicating that the trust has not acted independently of the union." As the Board indicates, *United Brotherhood* requires a showing that (1) "the Union is in fact controlling the trust" and (2) that provisions of the trust agreement have been ignored. 531 F.2d at 427. Following general principles in agency law, the central issue is whether the Trust is "subject to the control of another." 531 F.2d at 426.[1]

■ (1) The Board has not demonstrated that the Union controlled the Trust when the trustees voted to implement vision care benefits. In order to pass, the proposal required approval of a majority of the Union and employer trustees (unit voting). In this case, all the Union trustees voted for the proposal and a majority (2–1) of the employer trustees also voted for vision care benefits. As the dissenting opinion of member Fanning indicates, the Board paid only "scant attention" to this fact. In addition, there is no evidence that the employer trustees were in any way coerced or unduly influenced by the Union trustees when the decision was made. Even the lone dissenting employer trustee, Michael O'Brien, admitted that there were "no instances" where the Trust adopted a proposal by Un-

ion trustees over the objections of the employer trustees.

The fact that the Union distributed information about the vision care benefits hardly demonstrates that the Union controlled the Trust in establishing the plan. The administrative law judge found that the Union representatives did not take credit for the establishment of vision care benefits. The Union was doing what is customary for unions to do. It informed its members of benefits available to them.

■ (2) The Board did not establish by substantial evidence that the Union "caused" the Trust to violate the trust agreement when the trustees established vision care benefits.

The Trust was established pursuant to Section 302 of the Taft-Hartley Act (Taft-Hartley Trust), 29 U.S.C. § 186 and ERISA, 29 U.S.C. § 1001, *et seq.* which requires trustees to be independent of either the union or the employer. *National Labor Relations Board v. Amax Coal Co.*, 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981); *NLRB v. United Broth. of Carpenters & Joiners, supra*, 531 F.2d at 427. Several provisions of the Trust Agreement are designed to guarantee this independence and designed to conform to Section 302 and ERISA.

■ Although the charging parties bargain individually with the Union, each has signed an agreement accepting the provisions of the trust agreement, accepting those selected as employer trustees as its representatives, and agreeing to be bound by the decisions of the trustees. The decision of the Trust to implement vision care benefits was in accordance with the voting procedures set out in Article V, Section 3, of the Trust Agreement.

---

1. *Griffith Co. v. National Labor Relations Bd.*, 660 F.2d 406 (9th Cir. 1981), presents three fact situations where actions by the trustees have been attributed to the Union: (1) where provisions of the collective bargaining agreement remove the discretion to administer trust funds solely for the benefit of the employees (2) where the trustees' actions are directed by the Union, and (3) where trustees' acts are undertaken in their capacities as union officials rather an as trustees. These fact situations are essentially elaborations of the two-part test in *United Brotherhood*. *Griffith* does not add any additional support to the Board's contention that the Union controlled the trust.

Despite the language of Article III, Section 2,[2] the Board argues that the collective bargaining agreement and the bargaining history established that the parties did not intend to give the trustees authority to "involve an employer in plans other than those agreed to in collective bargaining." The Board interprets the Trust Agreement to allow the trustees only to "devise, adjust, and modify the specific terms of the various benefit plans." The Board argues that if trustees had the discretion to establish additional benefit plans, "the collective bargaining agreement would be meaningless."

The trustees decided to use $100,000 of reserve funds to institute vision care benefits for all Union members. The charging parties did not have to pay the Trust any money for these benefits. If the employer did not agree to pay for the benefits, the benefits would be terminated at the expiration of the existing collective bargaining agreement. While this action may put pressure on employers in the future, it did not violate the terms of the trust agreement.

**B.**  *Section 8(b)(3), 29 U.S.C. § 158(b)(3).*

■ In the absence of a finding that the Trust was an agent of the Union when the trustees voted to establish vision care benefits, there could be no violation of Section 8(b)(3) of the Act, 29 U.S.C. § 158(b)(3), at least not on the theory used to strike down the plan.

Section 8(b)(3) provides:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

. . . . .

(3) to refuse to bargain collectively with an employer, provided it is the representative of his employees subject to the provisions of section 159(a) of this title;"

The administrative law judge and the Board found that the Union and the Trust violated Section 8(b)(3) of the Act by "unilaterally changing the Employers' employee benefit plans to include vision care." However, the Trust acted independently of the Union in implementing the vision care benefits. The Union trustees made the proposal, but this fact is not dispositive. The vision care proposal could not have passed without the majority vote of Union *and* employer trustees. When the charging parties accepted the Trust, they agreed to be bound by decisions made by the Trust. The challenged decision was made by the Trust.

**C.**  *Regulation of Discretionary Acts of Trustees.*

■ The Trust and the Union argue that discretionary decisions by the trustees are subject to extensive regulation under Section 302 of the Taft-Hartley, 29 U.S.C. § 186 and Section 404 of ERISA, 29 U.S.C. § 1104. The Trust expresses concern that the Board's decision would make all internal decisions by trustees subject to collective bargaining. We believe the Trust's brief exaggerates the peril, but it is sufficient to note in this case that the Board went too far.

Under Section 302 of Taft-Hartley and Section 404 of ERISA, trustees are fiduciaries "whose duty to the trust beneficiaries must overcome any loyalty to the interest of the party that appointed him." *N.L.R.B. v. Amax Coal Co.,* 453 U.S. 322, 334–38, 101 S.Ct. 2789, 2796–2798, 69 L.Ed.2d 672 (1981). As a result, the Supreme Court stated that management-appointed trustees could not be representatives for purposes of collective bargaining within the meaning of Section 8(b)(1)(B)  of  the  Act,  29  U.S.C. § 158(b)(1)(B).

---

**2.**  *Article III, Section 2, Purpose of Trust:*

"The Trust Fund is created, established and maintained, and the Trustees agree to receive the Trust fund, hold and administer it, for the purpose of providing and maintaining any employee benefit, except pension, including but not by way of limitation, life and accident, health and welfare benefits; including dental, vision, drugs, and pharmaceutical supplies, for employees and retired employees, and qualified members of the family and/or qualified dependents. *The Trustees shall, in their sole discretion, determine which benefits shall be provided."* (Emphasis added.)

The same rationale could readily apply here. In the absence of a finding that the Trust was an agent of the Union, discretionary acts of trustees should be subject to regulation only under Section 302 and ERISA. Neither of these provisions is within the jurisdiction of the Board. If the trustees violate their fiduciary obligations, Section 302 of Taft-Hartley and Section 404 of ERISA provide remedies in the appropriate district court.

Because we hold that there was no Section 8(b)(3) violation, the Board's order cannot be enforced.

Petition denied.